160 So.2d 463

**EMPLOYERS INSURANCE COMPANY OF ALABAMA**

v.

**Lloyd M. CROOK.**

4 Div. 93.

Supreme Court of Alabama.

Jan. 30, 1964.

Robt. B. Albritton, Albrittons & Rankin, Andalusia, for appellee.

J. Kirkman Jackson, Birmingham, and Ralph A. Clark, Andalusia, for appellant.

180

COLEMAN, Justice.

This is an appeal by insurer from decree wherein the court adjudged that plaintiff, who had recovered a judgment against insured for personal injury resulting from automobile collision, have and recover the amount of the judgment from the insurer. By the policy, insurer agreed, subject to the limitations of liability, to pay on behalf of insured all sums which insured shall become legally obligated to pay as damages because of bodily injury sustained by any person, caused by accident and arising out of the use of the automobile. Insurer also agreed to pay for property damage so caused.

Insurer asserts that, on the evidence in the record, the court erred in rendering decree for the plaintiff and against the insurer. Insurer's reasons for asserting error are concisely stated in brief as follows:

"By Paragraph 18 of the Conditions of the Policy declared on, it is provided as follows:

"'The insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in affecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expenses other than for such immediate medical and surgical re-

lief to others as shall be imperative at the time of the accident.'

"It is the contention of the Company that the Peck woman violated both provisions of this condition in that she failed to cooperate, and in that she voluntarily made a payment in settlement of one of the consequences of the collision from which the litigation arose.

"By our Proposition III, we contend that where an insured, in the face of the condition of the provisions of the policy quoted above, voluntarily assumes any liability whatever, this results in a breach of the policy.

"There can be little doubt that Mrs. Peck violated this condition of the policy."

We consider first the contention that insured breached the agreement to cooperate with insurer in defending the action brought by plaintiff against insured.

■ When the insurer is unable to make a defense with the expectation of a fair presentation thereof without the cooperation of insured, a lack of cooperation, without legal excuse or collusion and in some material respect when needed and not waived by the insurer, should be and is a good defense. Metropolitan Casualty Ins. Co. v. Blue, 219 Ala. 37, 41, 121 So. 25; Employers Ins. Co. of Alabama v. Brooks, 250 Ala. 36, 39, 33 So.2d 3.

■ What constitutes a failure of cooperation by the insured is usually a question of fact. Metropolitan Casualty Ins. Co. v. Blue, supra; Alabama Farm Bureau Mutual Ins. Co. v. Teague, 269 Ala. 53, 56, 110 So.2d 290.

■ The burden of proof to establish non-cooperation rested upon the insurer. Employers Ins. Co. of Alabama v. Brock, 233 Ala. 551, 553, 172 So. 671; Alabama Farm Bureau Mutual Casualty Ins. Co. v. Cofield, 274 Ala. 299, 302, 148 So.2d 226.

The decree complained of must rest on a finding that insurer had not sustained the

burden of proving that insured had breach-ed the agreement to cooperate.

■ The evidence was taken orally before the judge rendering the decree, and the attending presumptions prevail. Employers Ins. Co. of Alabama v. Brock, supra.

The complaint alleges that the collision occurred "on to-wit: 9 February 1959." There is in evidence a letter, dated February 12, 1959, purporting to have been written to insurer by its agent. This letter recites as follows:

"2/12/59

"Employers Ins. Co.

"Gentlemen: "Marjorie Peck Policy No. Ac63512

"Mrs. Peck—Phone No. FA 2-5860 reports that Monday Feb. 9th, she was in the car owned by a Mr. Talbert and 1 other lady, near Opp, Ala. Mrs. Peck was driving Mr. Talbert's car. That it was foggy weather—they were the second car behind a school bus. The school bus through (sic) out the stop sign quickly—the car next to the school bus stopped very quickly—and she bumped into the car of Lloyd M. Crook, Elba, Ala. and damaged his 1957 Chev. 4 Dr Hard top. Mr. Crook finally agreed to go and get his damage repaired. She paid in cash the amount agreed upon $77.47 as shown by the memo she handed to me and I attach it hereto. The accident happened six miles Northeast of Opp, Ala. U. S. 84. I have given you her phone number. Mr. Talbert had collision ins. sufficient to cover his car—bus (sic) no liability and Mrs. Peck states her liability should cover the damage she did to Mr. Crook."

The evidence shows that the complaint in the action against insured was filed February 5, 1960, and served on insured May 13, 1960. The "Claim Manager" of the insurer testified that he received knowledge of the suit "May 13, 1960."

There is in evidence a letter purporting to have been sent by insured to insurer dated May 13, 1960. This letter recites: "I was served this summons today and I am mailing to you. Please inform me if I am needed for anything."

We understand the record to show that insurer did not acknowledge this letter until July 27, 1960.

There is evidence that insured called insurer's office on the telephone August 26, 1959; that insurer was never able to contact insured after insurer had received knowledge of the action brought against her by plaintiff; and that insurer sent probably five or more letters and some telegrams addressed to insured at various addresses. We do not understand that there is any proof that insured ever received any of the letters or telegrams.

On September 6, 1960, insurer learned that the husband of insured was in the construction business. Insurer did not learn the name of the husband's employer but did learn that: "They were either in Texas or California, that was as close as I could come to it." The case was set for trial on October 24, 1960, and was continued to and tried November 14, 1960.

The foregoing summarizes the evidence pertinent to the issue of cooperation as we understand it.

■ It cannot be said, as a matter of law, that merely because insured leaves the state she is guilty of failure to cooperate. Finkle v. Western Automobile Ins. Co., 224 Mo. App. 285, 26 S.W.2d 843, 848.

There is no positive showing that insured in the instant case was requested to assist in the defense and failed or refused to do so.

■ The court must have concluded that insurer had failed to show that insured had breached her agreement to cooperate. We have carefully reviewed the evidence and we cannot declare that we are fully convinced that the court erred in this con-

clusion. We may not see clearly that his conclusion is right, but we must see clearly that it is wrong, or it is supported by the presumption of correctness the law commands us to indulge. Marlowe v. Benagh, 52 Ala. 112.

There remains insurer's contention that insured breached the policy when she voluntarily made a payment to plaintiff to pay for repairing plaintiff's car. Insurer contends that, by making such payment, insured lost the right to require insurer to comply with the policy; and that plaintiff, who is subject to the same defenses that are good against insured, is also barred from recovering on the policy.

Plaintiff contends that "a factual situation was presented and insofar as direct evidence is concerned, this payment was made by a third party and not by the insured."

There is in evidence a statement dated June 4, 1959, purportedly signed by plaintiff, which recites in part as follows:

"   .   .   .   My car has been repaired by Ellison-Graves Chevrolet Company at Opp and the occupants of the Peck car paid $77.00 for repairs."

It is clearly established that such payment of $77.00 was made by someone. The plaintiff testified that the payment was made by Mr. Talbot who was one of the occupants of the automobile with insured.

The plaintiff offered in evidence as his Exhibit 10, the letter which is set out above, dated February 12, 1959, from insurer's agent to insurer. Referring to insured, the letter recites: "She paid in cash the amount agreed upon $77.47 as shown by the memo she handed to me and I attach it hereto."

The plaintiff offered in evidence a letter from insurer's "Claim Manager" to the attorney employed by insurer to represent insured in the action by plaintiff against insured. This letter states that insured had "rendered the bill in the amount of $77.47 to us" and that "we agreed to pay this." The letter further indicates that insurer did pay $77.47 to insured, probably on or about August 28, 1960 (?), and that in letter transmitting the payment insurer stated that payment was not an admission of liability or waiver of the conditions of the policy. The letter recites in part as follows:

"July 7, 1960

"  . . . . . . . . . . . . .

"It seems as though on February 9, 1959, at about 8:30 A.M. our insured Mrs. Marjorie K. Peck living at that time at 1005 22nd Avenue West here in Birmingham, Alabama, was driving a car owned by Mr. Charles Henderson at Warrior, Alabama, Box 24. Mr. Charles Henderson and a Mr. Talbert were also in the car with Mrs. Peck. The weather was rainy and foggy at the time and the roads were wet. It seems that Mrs. Peck was driving behind a car that was being driven by Mr. Lloyd M. Crook of Elba, Alabama. Mr. Crook was following behind a school bus. It seems the school bus stopped to pick up some children, Mr. Crook stopped behind the school bus, but Mrs. Peck was unable to stop her car in time and hit the rear of Mr. Crook's car.

"It seems that Mr. Charles Henderson did not have liability insurance on this car, and, of course, Mrs. Henderson's insurance was then called on to pay the damage under the driver of the other car coverage. It seems as though Mrs. Peck jumped out of the car and agreed with Mr. Crook on property damage amounting to the sum of $77.00. It seems that Mrs. Peck has since married Charles Henderson, and, of course, she rendered the bill in the amount of $77.47 to us and asked that we pay the same. After talking this over with our Legal Department, Mr. Kirk Jackson, we agreed to pay this property damage claim even though we had several policy defenses and certain conditions of the policy which Mrs. Peck did not adhere to. I believe you do have a copy of the letter of August 28, 1960, ad-

-dressed to Mrs. Charles Henderson at P. O. Box 24, Warrior, Alabama, which states that the insured shall not, except at his own risk, voluntary (sic) make any payment, assume any obligation or incur any expenses other than for immediate medical and surgical relief to others as she (sic) will be imperative at the time of the accident. Of course, due to that condition we, the Company, had neither legal or moral obligation to reimburse Mrs. Henderson for that damage. On the other hand we realize that she might have unwillingly done so on an occasion when the circumstances lead her to believe that it was imperative to satisfy Mr. Crook. This letter also contained a couple of paragraphs which read as follows:

> "(1) This payment is not in any way to be construed as an admission of liability by this company under the policy which is issued to you either with respect to your own demand or any other claims that might arise in connection with this occurrence. This payment is being made entirely at the cause of a mistake made by you in order to maintain your good will.

> "(2) It is not to be construed as waiver of the condition of the policy which is set out in this letter.

> "This was sent to Mrs. Peck and she agreed to this and in face we have her signed agreement in our file.

> ". . . . . . . . . . . . . ."

On this evidence, which was offered by *plaintiff,* we are fully persuaded that insured did voluntarily make the $77.47 payment for repair of plaintiff's automobile, and that any other conclusion would be plainly and palpably wrong.

■ As is already stated, plaintiff introduced this letter in evidence. Because plaintiff introduced this letter, and because its recitals are not contradicted, we are of opinion that plaintiff is bound by its recitals. One of the recitals is that the insured, "Mrs. Peck . . . agreed to this and in face (sic) we have her signed agreement in our file." If the insured, on accepting the payment made to her by insurer, signed an agreement to effect that the payment ". . . . is not to be construed as a waiver . . . . .," then we do not believe that insured could now say that the payment constituted a waiver of the breach of the policy condition. We understand the law to be " * * * that in a suit on a policy with *such a clause,* when the injured party is the plaintiff, the insurer may assert any defense which it could assert in a suit by the assured as plaintiff." (Emphasis Supplied.) Metropolitan Casualty Ins. Co. v. Blue, 219 Ala. at page 41, 121 So. at page 29.

"Such a clause" referred to in the last quotation is the cooperation clause. We see no reason why the same rule would not apply to the no payment clause.

In Blackwood v. Maryland Casualty Co., 227 Ala. 343, 150 So. 180, where the attorney for insured entered into agreement that the action of insurer in participating in trial and in representing insured should not be a waiver of the right of insurer to claim want of cooperation as a valid defense to the liability of insurer, this court said that the attorney's agreement was binding on insured. If the attorney's agreement permitted insurer to defend on the claim of lack of cooperation, surely the insured's own agreement would allow insurer to defend on the same claim.

■ We are, therefore, of opinion that the payment of $77.47 by insurer to the insured was not a waiver by insurer of the defense of breach of the no payment clause. This we hold because we understand the evidence to show that insured herself agreed that the payment would not be a waiver of such defense.

■ There are two reasons as we see it, however, why the payment of $77.47 by insured to plaintiff is not a bar to plain-

tiff's recovery against insurer in the instant case.

The first reason is the language of the clause itself. We repeat pertinent parts of the clause, to wit:

"The insured shall not, *except at his own cost,* voluntarily make any payment, assume any obligation or incur any expenses . . ." (Emphasis Supplied.)

The provision that insured shall not, *except at his own cost,* make any payment, seems to us to express the idea that insured might, without breaching the agreement, make a payment *at his own cost* without violating that provision of the policy. At least the language is susceptible of that construction, and, because the language is that of the insurer who prepared the policy and selected the language, the construction against insurer must be adopted. For this reason, we are of opinion that the payment made by insured to plaintiff does not bar plaintiff's recovery here.

■ The second reason is that insurer, by undertaking defense of plaintiff's action against insured when insurer possessed full and complete knowledge of the fact that insured had made such payment, waived the forfeiture, even if such payment be a forfeiture of insured's rights under the policy.

In Blackwood v. Maryland Casualty Co., 24 Ala.App. 527, 137 So. 467, the Court of Appeals held that if insured breached the cooperation clause in an automobile liability policy, and if insurer, with a knowledge of that breach, continued to represent insured in an action brought against him by the injured party, the action of insurer was a waiver of the breach and insurer could not, in an action by the injured party on the policy, plead such breach in bar of insurer's liability on the policy. We do not understand that this holding has been repudiated by later cases.

Insurer's assumption of defense of action brought against the insured as constituting a waiver of the right to set up insured's breach of the no payment clause is considered in annotations in 34 A.L.R. 730, 43 A.L.R. 326, and 71 A.L.R. 1467. The annotator summarizes the rule as follows:

"It may be stated as a general rule deducible from the cases cited in this annotation, that where by the terms of the policy the insurer assumes the obligation of defending or settling (or, in some policies, at its option, paying the amount of the policy), and the assured agrees that he will not, unless the insurer authorizes it, assume any liability or incur any expense, or interfere in any negotiations for settlement or legal proceedings being conducted by the insured, if the insurer, with knowledge of the facts, refuses to defend a claim within the terms of the policy, or abandons the defense, or conducts it in a negligent manner, or acts with bad faith towards the assured, it is in no position to invoke the clause whereby the assured agrees not to assume any liability or to exercise the right of conducting its own defense. Some of the cases view such conduct of the insurer as being a waiver of its rights under the clause, while others held that the insurer is estopped by its misleading conduct from invoking the clause." 34 A.L.R. 738.

In the case at bar, the automobile collision occurred February 9, 1959. On February 12, 1959, insurer's agent, by the letter of that date which is quoted above, fully advised insurer's "Claim Manager" that insured had paid $77.47 to plaintiff for damage to his car. On February 5, 1960, complaint was filed by plaintiff against insured, and served on insured May 13, 1960, more than a year after insurer had knowledge of the payment. The record indicates to us that counsel employed by insurer to represent insured filed demurrer on behalf of insured on June 18, 1960; that on July 7, 1960, the cause was submitted on demurrer, which was overruled July 14, 1960; that said counsel for insured filed plea of general issue on August 1, 1960; that the cause was set for trial October 24, 1960, and

continued to November 14, 1960; that on November 14, 1960, said counsel for insured withdrew his appearance for insured and that judgment nil dicit was rendered against insured; that on writ of inquiry final judgment was rendered against insured; and that this final judgment is the judgment which plaintiff seeks to collect in the case at bar.

The record does not disclose that insurer raised the breach of the no payment clause in any manner prior to August 28, 1960 (?), when insurer paid to insured $77.47 and obtained insured's agreement that such payment was not a waiver of any condition of the policy. Insured did not agree that insurer's undertaking the defense of the action was not a waiver of the breach of the no payment clause. At least, the record does not show that insured so agreed.

We have noted that the reference to "August 28, 1960," is contained in a letter dated "July 7, 1960," and are aware that one of these dates must be wrong. In either event, however, insurer did, with full knowledge of the alleged breach, undertake to defend, and did not then, or ever, so far as this record shows, advise insured that defense of the action was not a waiver of insured's breach of the no payment clause.

The record does not show that insured ever received notice of the date the action against insured was set for trial or that insurer would withdraw its defense of insured on that day. Counsel did not, so far as the record discloses, request a continuance on behalf of insured or opportunity to advise insured of the withdrawal. We are not unaware that insurer had not contacted insured for many months before trial and did not know insured's whereabouts.

 The rule is well settled that forfeitures are not favored by the law, and the insurer may waive provisions in the policy intended for insurer's benefit. Mutual Life Ins. Co. v. Lovejoy, 201 Ala. 337, 78 So. 299, L.R.A.1918D, 860.

We are not clearly persuaded that the trial court was wrong in finding that insurer had waived any forfeiture which may have resulted from the voluntary payment made by insured to plaintiff, even if such payment be a forfeiture under the no payment clause here relied on.

We therefore conclude that the decree is not infected with the errors insisted on by appellant and are of opinion that the decree should be affirmed. Marlowe v. Benagh, supra.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.