This appeal originated from a complaint for declaratory judgment and for damages from a breach of contract filed by Ho Brothers Restaurant, Inc., as owner of the China Star Restaurant in Gulf Shores ("the Restaurant") against Aetna Casualty Surety Company ("Aetna"). The Restaurant appeals from the trial court's order denying its own motion for summary judgment and granting Aetna's motion for summary judgment based on a provision in the insurance policy excluding coverage for "property held by the insured for sale or entrusted to the insured for storage or safekeeping." We reverse and remand.
On June 10, 1984, Aetna issued the Restaurant a policy of comprehensive liability insurance on its premises and further insuring the appellant against certain losses as well as providing coverage against the claims of other persons.
On September 1, 1984, while the policy was in effect, James P. Smith and Rosemary Pacella went to the Restaurant for dinner. Ms. Pacella had in her possession a green bag containing approximately $17,400 in cash given to her by Smith for safekeeping shortly before the couple entered the Restaurant. She kept the bag of money in her purse during dinner. After dinner, Ms. Pacella went into the ladies' room, where she removed the bag containing the money from her purse in order to get her hair brush. Ms. Pacella forgot to return the bag to her purse, and the money was left in the restroom. Shortly thereafter, Smith and Ms. Pacella left the Restaurant.
At closing time, one of the Restaurant's employees discovered the bag of money while cleaning the restroom and immediately informed the manager of the Restaurant. The manager instructed the employee to give the bag of money to the cashier, Wanda Taylor. Mrs. Taylor counted the money and placed it in a storage area near the cash register where she kept her personal belongings. Later that evening, the manager discovered that the bag of money was missing from the storage area. The bag of money was never found.
The next morning, Smith and Ms. Pacella returned to the Restaurant to report the loss of the money. At that time, they were informed that the money had been found and stored, but that it was missing from the storage area. Thereafter, Smith's attorney contacted the Restaurant and demanded that the Restaurant return the money to Smith. After receiving the demand, the Restaurant notified Aetna of the loss and requested that it assume the defense of any claims filed against it by Smith. Aetna promptly notified the Restaurant that it was refusing coverage and would not defend any claims filed against the Restaurant. On October 29, 1984, Smith sued the Restaurant and others for the loss of the money. As a result of this lawsuit, the Restaurant initiated the proceedings in the court below against Aetna for its breach of the insurance agreement.
On July 1, 1985, Aetna filed a motion for summary judgment and raised as grounds a provision in the policy of insurance which excludes coverage for "property held by the insured for sale or entrusted to the insured for storage or safekeeping." In defense of the motion, the Restaurant argued that it acted as a "gratuitous bailee" and that the money was not "entrusted" to *Page 605 
its care within the scope and meaning of the policy exclusion. The Restaurant also filed a motion for summary judgment declaring that Aetna, as a matter of law, owed a duty to insure the Restaurant against the claims of Mr. Smith. Following oral arguments, the court granted Aetna's motion and denied the Restaurant's motion.
The issue before this Court is whether the finding and setting aside of the money by the Restaurant constituted an "entrustment" within the meaning of the insurance exclusion provision. We hold that it did not and that summary judgment in favor of Aetna was, therefore, improper.
Summary judgment is appropriate only when the moving party clearly shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56 (c), Ala.R.Civ.P. If there is a scintilla of evidence supporting the party against whom the motion is made, summary judgment may not be granted. Henderson v. Winkler,454 So.2d 1358 (Ala. 1984); Savage v. Wright, 439 So.2d 120 (Ala. 1983).
The Restaurant contends that the ordinary meaning of the word "entrustment" carries with it the connotation of delivery or a commitment or an act of surrender of the money to the Restaurant with the expectation that the Restaurant would handle, use, or keep the funds in an agreed manner. The Restaurant argues that, at best, a gratuitous bailment arose when the Restaurant found the money.
Aetna argues that an "entrustment" is the same thing, legally, as a bailment and that there is a bailment where there is a change of possession — actual or constructive — and where the bailee voluntarily assumes custody and possession of the property for the bailor.
At the outset, we recognize that insurance companies have a right to limit their liability and to write policies with narrow coverage. United States Fidelity Guaranty Co. v.Bonitz, 424 So.2d 569 (Ala. 1982). However, an insurance contract containing ambiguous language will be construed liberally in favor of the insured and strictly against the insurance company. Turner v. United States Fidelity GuarantyCo., 440 So.2d 1026 (Ala. 1983). Furthermore, provisions of insurance policies must be construed in light of the interpretation that ordinary men would place on language used therein. McKissick v. Auto-Owners Ins. Co., 429 So.2d 1030
(Ala. 1983).
Since we are to give insurance policies a plain meaning construction, we reject all arguments attempting to equate "entrustment" with "bailment," and thereby to define one word by citing to the definition of another word.
Cases interpreting the meaning of "entrusted" or "entrustment" in situations similar to that which we are faced with are seemingly nonexistent. We have, however, discovered a line of cases from other jurisdictions which have undertaken to construe insurance policy exclusions for theft committed by any person entrusted by the insured with either custody or possession of the insured's vehicle. The leading case isPacific Indemnity Co. v. Harrison, 277 S.W.2d 256, 259-61
(Tex.Civ.App. 1955), which stated on rehearing:
 "Under our Certificate of Title Act, Penal Code, Article 1436-1, sections 32, 52 and 53, appellees had not parted with title and possession of the automobile in question. Hence coverage was not excluded under the terms of the policy on the ground that they had voluntarily parted with title and possession.
 "However the contract of insurance which the parties entered into contained this express provision: `Exclusions — The policy does not apply: * * * (d) Under any coverage — to loss resulting from * * embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person, including any employee, entrusted by the insured with either custody or possession of the automobile.'
". . . .
 ". . . The appellees, the owners here, did not execute or deliver the title to the *Page 606 
thief at any time. They had the thief's promise to return the next day to complete execution of the papers necessary to effect transfer of title and to make final arrangements about insurance coverage. Meantime appellees, . . . entrusted possession of the car of which they were still the owners to the thief in reliance upon his promise. The thief betrayed the trust. He did not return next day. He has not been located or heard from since he obtained the car. He kept the car, which he obtained by inducing appellees to trust him with possession during the interim that must necessarily transpire before the deal could be consummated the next day.
 "The word entrust has been defined by both lay and legal authorities in substance to mean to commit something to another with a certain confidence regarding his care, use or disposal of it. Webster's New International Dictionary, Second Edition (1941); State v. Ugland, 48 N.D. 841, 187 N.W. 237, at page 239; 22 Words and Phrases, Intrust, p. 485; 48 C.J.S., Intrust, p. 754. [Emphasis added.]
 ". . . Here, . . . the facts constitute a conversion, secretion, (or) theft' committed by a person `entrusted by the insured with either custody or possession of the automobile.' Since such a situation expressly excludes coverage under the express terms of the policy, . . . the judgment of the trial court should be reversed and judgment rendered that appellees take nothing."
Under Pacific Indemnity Co., supra, and its progeny, in order for there to be an "entrustment" of an automobile, there basically has to be a voluntary and actual delivery of keys and/or the vehicle to the thief by the insured. E.g., ImperialIns. Co. v. Ellington, 498 S.W.2d 368 (Tex.Civ.App. 1973);Truck Ins. Exchange v. Bill Olinger Mercury, Inc., 262 Or. 8,495 P.2d 1201 (1972); Mock v. Missouri Union Ins. Co.,328 S.W.2d 61 (Mo.Ct.App. 1959).
We are not convinced by Aetna's argument that the exclusion was activated when the Restaurant exercised control over Smith's money and held it on his behalf for storage or safekeeping. In effect, Aetna's argument would mean that A could entrust B with property with confidence regarding B's care, use, or disposal of the property without actually making B aware that A expected B to act accordingly.
The Restaurant did, in fact, exercise control over the money by placing it in the storage area while awaiting the owner's return; however, this was done, more or less, out of a sense of necessity, since it would have clearly been unreasonable for the Restaurant to leave the $17,400 in the ladies' room. Obviously, the better alternative would have been for the Restaurant to turn the money over to the police forthwith; nevertheless, the Restaurant's action in placing the money in the storage area was not, as a matter of law, synonymous with an entrustment.
We hereby adopt the Pacific Indemnity Co., supra, construction of "entrustment" as the construction which ordinary men would place on the word "entrustment." Implicit in this holding is the requirement of some expectation on the part of each party as to how each will act with respect to the "entrusted" property.
In adhering to the scintilla rule, we must find that the trial court erred in granting summary judgment in favor of Aetna. We hereby reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur. *Page 607