229 N.J. Super. 43 (1988)
550 A.2d 1006
CARL RANSOM, PLAINTIFF,
v.
SELECTIVE INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided June 27, 1988.
*44 Robin G. Marks for plaintiff (Francis J. Hartman, attorney).
Thomas J. Demarest for defendant.
HAINES, A.J.S.C.
This opinion interprets the "examination under oath" clause included in fire insurance policies pursuant to N.J.S.A. 17:36-5.20.
Plaintiff Carl Ransom's dwelling, covered by an insurance policy issued by Selective Insurance Company, was destroyed by fire. Local police have filed a charge of arson against Ransom. That claim has not as yet been raised by Selective. However, through counsel, it has demanded that Ransom submit to an examination under oath as required by policy provisions. Those provisions, which comply with the requirements of N.J.S.A. 17:36-5.20, as pertinent here, are:
In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
....
d. exhibit the damaged property as often as we reasonably require and submit to examination under oath....
Counsel's letter requesting the examination demands, among other things, production of income tax returns, payroll records, itemized listings of income received, assets and liabilities and *45 various other kinds of financial information. Ransom objects to the furnishing of the data demanded, claiming that the insurer is limited to a request for information which relates directly to the fire loss and not to indirect information contained in material which may otherwise be privileged. The insurer argues that it has a right to the requested financial information in order to determine whether it should decline coverage by reason of arson. It points out that Ransom's financial circumstances may indicate a need for money sufficiently severe to motivate the burning of the dwelling.
Our New Jersey courts have not considered the scope of the "examination under oath" clause. No doubt insurance policies, as contracts of adhesion, must be construed most strongly against the carrier and in a way that meets the expectations of the insured, namely, to provide coverage. Summonte v. First American Title Ins. Co., 180 N.J. Super. 605, 610 (Ch.Div. 1981), aff'd 184 N.J. Super. 96 (App.Div. 1981). These basic rules of interpretation are of little assistance here and they may not even apply when the language is statutory. Kisting v. Westchester Fire Ins. Co., 290 F. Supp. 141, 147 (W.D.Wisc. 1968). When policy language is clear, the courts must enforce it. Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599 (App. Div. 1956).
The words "examination under oath" are clear. They are part of a clause which is statutorily required and included in that section of the policy dealing with duties imposed upon the insured after a loss occurs. The information sought by the insurer in order to consider a possible claim of arson, particularly when the insured has been charged with arson by the police authorities, is relevant, material and reasonably sought. Logically, the information should be provided, and must be, unless the invasion of privacy is so great or the language of the policy so limiting that a financial inquiry is impermissible. This court finds no such invasion and no such limiting language.
*46 A number of courts in foreign jurisdictions have considered the clause in question. North Carolina has a statute similar to New Jersey's, N.C. Gen. Stat. § 58-176, which, however, specifically requires the insured to produce certain financial records on request. In Chavis v. State Farm Fire and Casualty Co., 317 N.C. 683, 346 S.E.2d 496 (Sup.Ct. 1986), the court held that a claimant's financial condition is a relevant matter of inquiry when arson is suspected. Nevertheless, the court required a request for the production of documents to be reasonable and specific, prohibiting any unlimited excursion into an insured's business records. 346 S.E.2d at 498-499.
New York has statutory provisions similar to North Carolina's. N.Y.Ins.Law § 3404. In Happy Hank Auction Co. v. American Eagle Fire Ins. Co., 286 A.D. 505, 145 N.Y.S.2d 206 (1955), mod. on other grds 1 N.Y.2d 534, 154 N.Y.S.2d 870, 136 N.E.2d 842 (Ct.App. 1956), the court read them as requiring the production of documents relating to the financial condition of the insured, provided suspicious circumstances were present and the request for documents had point and direction. 145 N.Y.S.2d at 211. In Ausch v. St. Paul Fire & Marine Ins. Co., 125 A.D.2d 43, 511 N.Y.S.2d 919 (1987), the court held that the refusal of an insured to document financial status was a defense to an action on the policy Id. 511 N.Y.S.2d at 925.
It has been said that the purpose of the examination of the insured under a cooperation clause in a fire policy is to determine whether the claim is just and should be paid. Mulkey v. U.S.F. & G. Co., 243 S.C. 121, 132 S.E.2d 278, 283 (Sup.Ct. 1963). Some authorities support a liberal examination, permitting inquiry into everything fairly relevant to the insurance and the loss. 45 C.J.S., Insurance, § 1024. Gross v. U.S. Fire Ins. Co., 71 Misc.2d 815, 337 N.Y.S.2d 221 (Sup.Ct. 1972), held that an insured charged with arson could not escape the obligation to submit to an examination under oath on the ground of self-incrimination. Id. 337 N.Y.S.2d at 224.
*47 Ransom, in addition to his arguments against the insurer's construction of the policy, contends that the proposed financial inquiry violates the New Jersey rule that evidence of poverty is not admissible to prove a criminal motive. State v. Mathis, 47 N.J. 455 (1966); State v. Stewart, 162 N.J. Super. 96, 100 (App.Div. 1978). The Mathis Court acknowledged the logical connection between a lack of money and the commission of a crime involving financial gain but refused to admit such evidence because "it would prove too much against too many." 47 N.J. at 471. Mathis and Stewart are criminal cases. Ransom faces civil litigation in which there is not the same need for a strict exclusionary rule of evidence. The proposed examination does not seek a criminal motive, it seeks evidence of the breach of an insurance contract. A criminal defendant faces the loss of life and liberty, a civil defendant, like Ransom, only the loss of money or other property. Liberal rules of discovery, permitting a search not only for what is relevant but also for what may lead to what is relevant, apply in civil cases. R. 4:10-2; Franklin v. Milner, 150 N.J. Super. 456, 465 (App. Div. 1977). In criminal cases the rules are more narrow. R. 3:13-2 to -4. These reasons, standing alone, defeat Ransom's argument. And there are other reasons.
The cases previously cited in this opinion do not limit an examination on the Mathis-Stewart theory. Gross, for example, even refused the shelter of the Fifth Amendment. Other cases permit a broad inquiry into an insured's financial affairs, notwithstanding the prospect of an arson claim. In Southern Guaranty Co. v. Dean, 252 Miss. 69, 170 So.2d 553 (Sup.Ct. 1965), the court denied recovery to an insured who refused to answer questions about her financial circumstances and failed to produce income tax returns, records of bank accounts, records of gross business profits and a financial statement although related to "the defense of arson." The policy clause in question was identical to the clause examined here. See also U.S. Fidelity and Guaranty Co. v. Conaway, 674 F. Supp. 1270 (N.D.Miss. 1987).
*48 Stover v. Aetna Casualty and Surety Co., 658 F. Supp. 156 (S.D.W. Va. 1987), dealt with a like examination clause. The Stover court said:
Nevertheless, on one area of particular concern to the Defendant, his propensity to commit arson due to financial distress, there was a failure of cooperation. The Plaintiff either made no response, or gave vague, general answers when asked about his financial status. Through his attorney, he refused to turn over his income tax returns or bank statements from previous years. Once the Defendant put in issue the possibility of arson, this information became pertinent ...
The sphere of the Plaintiff's failure to cooperate here was greater in importance than it bore to the volume of material covered. That a stressed financial condition may provide the motive for arson is well recognized. It may be a key component of what is often a circumstantial case. [at 160]
The opinions of the foreign courts concerning the scope and interpretation of the examination under oath clause are persuasive. I find no convincing argument supporting Ransom's position. He must submit to the examination under oath and must produce the requested documents in accordance with the written demand of counsel. He is required to do so because the circumstances surrounding the loss arouse a justified suspicion of arson and because the requests are specific, relevant, material and reasonable. To the extent that they invade Ransom's privacy, those circumstances permit the invasion.