728 So.2d 135 (1998)
Ex parte Patricia CLARKE, individually and as executrix of the estate of Stanley Clarke, deceased
(Re Patricia Clarke, individually and as executrix of the estate of Stanley Clarke, deceased v. Allstate Insurance Company et al.)
1970242.
Supreme Court of Alabama.
December 11, 1998.
*136 Joseph C. Sullivan, Jr., and David A. Boyett III of Hamilton, Butler, Riddick, Tarlton & Sullivan, P.C., Mobile, for petitioner.
Louis Braswell of Hand Arendall, L.L.C., Mobile, for respondents Allstate Ins. Co., Wesley Mayfield, and Tommy Land.
ALMON, Justice.
The principal questions presented by this certiorari review are whether a purported endorsement was properly made a part of the plaintiffs' insurance policy; whether the summary judgment for the defendant insurer could properly be based on the insurer's arguments that the plaintiffs had breached their duty to cooperate with the insurer; and whether the plaintiffs supported their allegations that the insurer's requests were part of a "plan or scheme to intimidate or discourage insureds from pursuing legitimate claims by requiring insureds who filed a claim to submit to examination under oath by [the insurer's] attorneys and/or to produce or release extensive personal and financial information which had no relevance to the claim."
Stanley Clarke and his wife Patricia Clarke commenced this action against Allstate Insurance Company, alleging that Allstate had breached its contract with them and had acted tortiously by requiring them to submit to an examination under oath and to produce extensive personal and financial records as a prerequisite to Allstate's paying an insurance claim submitted by the Clarkes. The Clarkes also named as defendants Wesley Mayfield, the Allstate agent who had sold them their automobile insurance policy, and Tommy Land, the Allstate adjuster who investigated their claim. We shall refer to the defendants collectively as "Allstate." Stanley Clarke died after he and his wife had filed their complaint. Subsequently, Patricia, as the executrix of his estate, was substituted for him as a plaintiff.
The circuit court granted Allstate's motion for a summary judgment as to all claims. The Court of Civil Appeals affirmed the summary judgment, without an opinion. Clarke v. Allstate Ins. Co., 723 So.2d 118 (Ala.Civ. App.1997) (table). Mrs. Clarke petitioned for certiorari review. We issued the writ to determine whether the affirmance by the Court of Civil Appeals conflicts with earlier decisions of this Court.
In July 1995, the Clarkes reported to police that their 1987 Chevrolet Blazer had been stolen. They filed a proof of loss with Allstate, their automobile insurer. A few weeks later, Patricia Clarke informed police and Allstate that she had found the Blazer in the parking lot of a Mobile apartment complex. The Clarkes filed with Allstate a second proof-of-loss form, claiming that their Blazer had been damaged during the time that it was allegedly stolen.
*137 Tommy Land, an Allstate adjuster, inspected the Clarkes' Blazer after it was recovered. In his deposition, he stated that the locks on the Blazer had not been broken and that none of the vehicle's electrical wires had been cut. Also, a police report indicated that the driver-side window on the Blazer had been broken from the inside. On the basis of these facts, Land concluded that whoever had taken the Blazer had done so with a key.
On September 14, 1995, Allstate, acting through one of its attorneys, mailed the Clarkes a letter informing them that, because of "the nature and circumstances of [their] loss," they were "requested ... to appear before [the attorney at a stated day and time] for the purpose of giving oral testimony under oath." Allstate requested that the Clarkes bring with them the following documents:
"INSURANCE POLICIES
"1. The subject insurance policy.
"2. Copies of other insurance policies covering any property which is the subject of this loss or claim; and if such policy is not available, then such information with respect to these policies, including the name of the insurer and the amount and nature of the coverage.
"DEEDS AND PROPERTY INFORMATION
"3. The instrument of conveyance pursuant to which you obtained title to the subject property.
"4. All mortgages, liens or other encumbrances on the subject property or upon any other property you may own or have an interest in.
"5. All appraisals on the subject property, before or after the loss, and before or after your purchase or acquisition of the property.
"6. Any listings, agreements or any documentation reflecting offers to buy or sell the subject property within the last five years before this loss.
"7. All photographs of the subject property, contents or other property which is the subject of this claim which may be in your possession, whether taken before or after the loss.
"8. All estimates or proposals for repairs.
"9. All documentation, forms and papers reflecting any information concerning any prior loss.
"[The letter contained no item 10.]
"TAX AND FINANCIAL INFORMATION

"11. Your income tax returns for the three years preceding this loss.
"12. Copies of all monthly bank statements, cancelled checks and all work and financial records kept by you in your behalf for the three years preceding this loss, including checking accounts and savings accounts.
"13. If employed, your withholding statements or check stubs, which reflect your income and withholding deductions.
"14. Any and all books of account or ledgers kept on behalf of any business in which you were an owner, part-owner or partner for the years 1991 through 1994, plus copies of monthly bank statements, cancelled checks, [and] tax returns filed on behalf of these businesses for the same years.
"15. All documents reflecting any debts owed by you within six months preceding the date of this loss.
"OTHER

"16. Any and all other documents of any kind which you may have or which you can obtain to verify the claim which you have filed for this loss, including, but not limited to, any cancelled checks, sales receipts, bills of sale, credit card records, or other documents reflecting purchase of the individual items of personal property set forth in the inventory submitted by you."
The letter represented to the Clarkes that their insurance policy included this provision:
"PART VI PROTECTION AGAINST LOSS TO THE AUTO
"What You Must Do After a Loss
"(1) As soon as possible any person making a claim must give us written proof of loss, including all details reasonably required *138 by us. We have the right to inspect the damaged property.
"(2) Protect the auto from further loss. We will pay reasonable expenses to guard against further loss. If you don't protect the auto, further loss is not covered.
"(3) Report all theft losses promptly to the police."
The Clarkes did not appear for the scheduled oral examination. Allstate rescheduled the examination twice, but the Clarkes did not appear on either of the two later dates that Allstate selected. On October 18, 1995, Land mailed the Clarkes a letter informing them that Allstate assumed that they were not interested in pursuing their claim, because they had not submitted to an examination under oath. He enclosed with the letter a release document, and he asked the Clarkes to execute and return that document if they were indeed no longer interested in pursuing their claim. In the alternative, Land asked the Clarkes to contact Allstate to arrange another time for an oral examination. Like the previous letter from Allstate's attorney, Land's letter represented to the Clarkes that their policy provided:
"PART VI PROTECTION AGAINST LOSS TO THE AUTO
"What You Must Do After a Loss
"(1) As soon as possible any person making a claim must give us written proof of loss, including all details reasonably required by us. We have the right to inspect the damaged property.
"(2) Protect the auto from further loss. We will pay reasonable expenses to guard against further loss. If you don't protect the auto, further loss is not covered.
"(3) Report all theft losses promptly to the police."
Again, the Clarkes did not reply to Allstate's correspondence, and Allstate did not pay the Clarkes' claim. On October 27, 1995, the Clarkes initiated this action. In their complaint, the Clarkes alleged that Allstate had breached its contract with them and had committed the torts of bad-faith failure to pay a claim, fraudulent misrepresentation, suppression, and the tort of outrage. Moreover, the Clarkes alleged that the defendants had engaged in a civil conspiracy against numerous Allstate policyholders, including the Clarkes.
We have no indication that Mrs. Clarke argued to the Court of Civil Appeals that the summary judgment was erroneous as to the bad-faith, outrage, and conspiracy claims. Her certiorari petition raises no issue regarding the affirmance of the judgment as to those claims, and she makes no argument in her brief for a reversal as to those claims. Therefore, the judgment will be affirmed as to the bad-faith, outrage, and conspiracy claims.
In support of its motion for a summary judgment, Allstate submitted the affidavit of Noble Tinnea, an Allstate staff claims analyst. Tinnea attached to his affidavit an exhibit he stated was "a true and correct copy of the complete declaration page, policy jacket, and endorsements that were effective from July 25, 1995 through January 25, 1996, for Allstate Automobile Policy No. XXXXXXXXX, issued to Patricia and Stanley Clarke." Included in that exhibit is an endorsement, designated AU1372-7. The Clarkes' policy had been in effect since 1987, apparently with semiannual renewals. Allstate asserts that endorsement AU1372-7 was added to their policy in 1992. That endorsement provides:
"IV. Part VI, Protection Against Loss To The Auto, is amended as follows:
"A. ....
"B. Point 1 of the `What You Must Do If There Is A Loss' provision is replaced by the following:
"`What You Must Do If There Is A Loss
"`(1) As soon as possible, any person making claim must give us written proof of loss. It must include all details reasonably required by us. We have the right to inspect the damaged property. We may require any person making claim to file with us a sworn proof of loss. We may also require that person to submit to examinations under oath and sign the transcript.'"
*139 (Emphasis added.) The declarations page that is part of the exhibit to Tinnea's affidavit references endorsement AU1372-7 as being part of the Clarkes' policy.
Relying on this alleged endorsement, Allstate argued that, because the Clarkes had refused to submit to an examination under oath, they had failed to comply with their insurance policy's prerequisites for filing a claim for damage to their Blazer and had failed to cooperate with Allstate in its processing of the claim. Thus, Allstate contended, the Clarkes could not assert a breach-of-contract claim because they had not complied with all the provisions of their insurance contract.
In response to Allstate's argument, Patricia Clarke submitted her own affidavit, stating that she neither had received a copy of, nor had knowledge of, the alleged endorsement that Allstate was relying upon to require her and her husband to submit to an examination under oath. She said that, until Allstate proffered the alleged endorsement as an exhibit to Tinnea's affidavit, the only prerequisites to filing a claim that she knew about were those that were set out in the provision recited in the letters she had received from Allstate. Her affidavit stated: "A true and correct copy of our Allstate automobile insurance policy is attached hereto as Exhibit `A.'" Exhibit A to her affidavit reads like the two letters from Allstate; it does not include the alleged endorsement. That exhibit does not, however, include a copy of the declarations page.
On the basis of the statements in Patricia Clarke's affidavit, she argues that a material question of fact exists as to whether the endorsement proffered by Allstate was in fact a valid part of the Clarkes' insurance policy that would compel them to submit to an examination under oath. Mrs. Clarke contends that such a factual dispute should be resolved by a jury and that the circuit court consequently erred by entering the summary judgment on the breach-of-contract, misrepresentation, and suppression claims. She contends that the affirmance of that judgment as to those claims conflicts with Pinyan v. Community Bank, 644 So.2d 919, 923 (Ala.1994) ("there [was] a genuine issue of material fact as to whether the parties formed a contract and as to what the terms of that contract would be"; thus, it was error to enter a summary judgment for the defendant); Mobil Oil Corp. v. Schlumberger, 598 So.2d 1341, 1346 (Ala.1992) ("In a breach of contract action, a summary judgment is appropriate only where the contract is unambiguous and the facts are undisputed."); Gossett v. Twin County Cable TV., Inc., 594 So.2d 635, 640 (Ala.1992) ("Unless the evidence submitted on a summary judgment motion is wholly without adverse inferences or is free from any doubt, summary judgment must not be entered, but the issues must be submitted to the jury."); and Quad Cities Nissan, Inc. v. Griffin, 638 So.2d 830, 831 (Ala.1994) (on a summary judgment motion, a court views the evidence in the light most favorable to the nonmoving party).
The Clarkes' original policy, the provisions of which were cited in the letters they received from Allstate, contained no provision that would require them to submit to an examination under oath as a prerequisite to recovering on their insurance claim. The original policy required the Clarkes to provide Allstate a written proof of loss, including "all details reasonably required by [Allstate]"; to protect the insured property from further loss; and to report any theft loss to the police. The original policy also allowed Allstate to inspect any insured property that was damaged. However, nothing in the original policy allowed Allstate to require the Clarkes to submit to an examination under oath. Moreover, no part of that policy entitled Allstate to request the broad range of documents it requested or to require the Clarkes to submit to an examination under oath. Of course, the endorsement proffered by Allstate with its motion for summary judgment would expressly allow Allstate to subject the Clarkes to an examination under oath. However, the question whether that endorsement was properly made a part of the Clarkes' policy is sharply contested.
We note that this case is unlike Nationwide Ins. Co. v. Nilsen, [Ms. 1961955, June 19, 1998] ___ So.2d ___ (Ala.1998), because the policy in Nilsen undisputedly included a clause requiring the insured to "submit to an *140 examination under oath." ___ So.2d at ___.[1] Similarly, other cases relied upon by Allstate did not present a question whether such a clause had effectively been made a part of the insurance contract.
Ala.Code 1975, § 27-14-19(a), provides:
"[E]very policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance...."
Section 27-14-1(1), Ala.Code 1975, defines the term "policy," as it is used in § 27-14-19(a), as including "endorsements" to insurance contracts. In Brown Machine Works & Supply Co. v. Insurance Co. of North America, 659 So.2d 51 (Ala.1995), this Court addressed a situation in which an insurer failed to comply with § 27-14-19(a) by not mailing or delivering to an insured a copy of the insurance policy that was at issue in that case. In Brown Machine Works, the Court held that "an insurer who fails to follow the statutory mandate of § 27-14-19 may be estopped from asserting an otherwise valid coverage exclusion." 659 So.2d at 58.
In her affidavit, Patricia Clarke denied that she had received, or had had any knowledge of, the endorsement. Allstate takes issue with the sufficiency of her denial, however, pointing out that she did not state whether Stanley Clarke had ever received, or had had knowledge of, the endorsement. However, Allstate first relied on the alleged endorsement when it submitted Noble Tinnea's affidavit in support of its motion for summary judgment. That affidavit is dated May 3, 1996. Stanley Clarke had died on November 19, 1995. Thus, Stanley Clarke never had any occasion to state whether he had received the endorsement Allstate claims to have sent, and presumably Patricia Clarke could not affirmatively state that he had not. Patricia Clarke's affidavit did not directly state that no copy of the endorsement was included among the Clarkes' papers regarding their Allstate policy. However, by submitting a copy of that policy, without the endorsement, as a "true and correct copy of our Allstate insurance policy," she presented substantial evidence that no copy of the endorsement was included with the Clarkes' copy of the policy. Together with Patricia Clarke's statement that she had not received the endorsement, the record contains substantial evidence indicating that Allstate had not mailed or delivered the endorsement to the Clarkes. We note that Noble Tinnea's affidavit does not state that the endorsement was mailed or delivered to the Clarkes, and Allstate did not submit any evidence that it was.
We are somewhat troubled by the failure of Mrs. Clarke to include a copy of the declarations page with the copy of the policy that she attached to her affidavit. The copy of the declarations page submitted by Noble Tinnea shows endorsement AU1372-7 as part of the policy. However, this reference in a 1995 semiannual renewal of the policy does not establish that Allstate had mailed or delivered the endorsement to the Clarkes in 1992 or thereafter. Mrs. Clarke's denial of the receipt of the endorsement, together with Allstate's failure to assert that it had mailed or delivered it, leaves a fact question as to whether the endorsement was delivered and was thereby made a part of the policy through compliance with § 27-14-19(a).
Furthermore, this conclusion is supported by the failure of Allstate itself to rely upon the alleged endorsement when it notified the Clarkes that it intended to examine them under oath. The two letters it sent them before they filed this action both quoted the original policy language rather than the language of the endorsement. In addition to supporting a finding that Allstate had not effectively made the endorsement a part of the Clarkes' policy, these letters might support a holding that Allstate had waived any reliance on the alleged endorsement. "[F]orfeitures are not favored by the law, and the insurer may waive provisions in [a] policy intended for [the] insurer's benefit." Employers *141 Ins. Co. of Alabama v. Crook, 276 Ala. 177, 185, 160 So.2d 463, 470 (1964).
We conclude that the factual disputes made the summary judgment inappropriate as to the claim alleging breach of contract, and that, as Mrs. Clarke asserts, the Court of Civil Appeals' affirmance of that judgment as to that claim conflicts with the cases she has cited, especially Pinyan v. Community Bank and Mobil Oil Corp. v. Schlumberger, both supra. There was a factual dispute as to whether the endorsement was part of the Clarkes' insurance policy. Thus, Allstate was not entitled to a summary judgment based on its assertion that the Clarkes' had failed to comply with the "examination under oath" provision and with the provision requiring the insureds' cooperation. "What constitutes a failure of cooperation by the insured is usually a question of fact," and "[t]he burden of proof to establish non-cooperation rest[s] upon the insurer." Employers Ins. Co. v. Crook, 276 Ala. at 180, 160 So.2d at 465 (citations omitted); State Farm Mut. Auto. Ins. Co. v. Hanna, 277 Ala. 32,, 38, 166 So.2d 872, 877 (1964). American Auto. Ins. Co. v. English, 266 Ala. 80, 86, 94 So.2d 397, 402 (1957). An insurer "cannot avoid its obligations on this ground" unless the insured's failure to cooperate "is both material and substantial." Home Indem. Co. v. Reed Equip. Co., 381 So.2d 45, 48 (Ala. 1980); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Teague, 269 Ala. 53, 56-58, 110 So.2d 290, 293-94 (1959).
There is the further question whether Allstate's request for production of documents was permitted by the terms of the policy. Allstate contends that its document request was merely incident to its request for an examination under oath and, therefore, was reasonably encompassed by the provision of the endorsement. For this proposition, Allstate has cited Ransom v. Selective Ins. Co., 229 N.J.Super. 43, 550 A.2d 1006 (1988). We decline to follow the holding in Ransom in this case. Alabama courts have long held that insurance contracts are to be strictly construed against the insurer and liberally in favor of the insured. Tyler v. Insurance Co. of North America, Inc., 331 So.2d 641 (Ala.1976). In Employers Ins. Co. v. Brooks, 250 Ala. 36, 39, 33 So.2d 3, 5 (1947), the Court noted that the cases, as cited therein, "show[] a desire to give a reasonable construction to the conduct of [the] insured" in regard to the duty of cooperation. Similarly, courts should give a reasonable construction to the insured's right to ask for cooperation. "Furthermore, provisions of insurance policies must be construed in light of the interpretation that ordinary men would place on language used therein." Ho Bros. Restaurant, Inc. v. Aetna Cas. & Sur. Co., 492 So.2d 603, 605 (Ala.1986).
In United States Fidelity & Guar. Co. v. Welch, 854 F.2d 459 (11th Cir.1988), the Court of Appeals for the Eleventh Circuit, applying Alabama law, declined to allow an insurer to separately examine its policyholders, a husband and wife, because the policy did not expressly give it the right to examine them separately. The court stated: "[S]trong public policy of Alabama supports the proposition that insurance companies should not be accorded ex gratia advantages which they did not insert in the policy...." 854 F.2d at 460.
As we have shown, neither the original policy nor the endorsement gave Allstate the right to require its insureds to produce documents other than "details reasonably required" by Allstate in support of an insured's written proof of loss. Even if the provision allowing Allstate to call for "details reasonably required" may be read to support Allstate's demand for some or all of the items listed under the first two headings in Allstate's September 14, 1995, letter ("INSURANCE POLICIES" and "DEEDS AND PROPERTY INFORMATION"), it cannot be read to support the demand for the items listed under the heading "TAX AND FINANCIAL INFORMATION." Furthermore, this third demand is so broad as to be unreasonable on its face.
For the foregoing reasons, we conclude that the evidence created genuine issues of material fact on the Clarkes' breach-of-contract claim and that Allstate, therefore, was not entitled to a judgment as a matter of law on that claim. The affirmance by the Court *142 of Civil Appeals is due to be reversed as to the contract claim.
The circuit court's summary judgment also related to the Clarkes' misrepresentation and suppression claims. The complaint makes the following factual averments:
"At the time the Plaintiffs purchased the policy, and thereafter, the Defendant Allstate was engaged in a plan or scheme to intimidate or discourage its insureds from pursuing legitimate claims by requiring insureds who filed a claim to submit to examination under oath by Allstate's attorneys and/or to produce or release extensive personal and financial information and documents which had no relevance to the claim. A purpose of such plan or scheme was to deter Allstate's insureds from pursuing legitimate claims and to thereby reduce the amount of money Allstate would ultimately have to pay in claims."
The misrepresentation claim alleges that, by using the language in the original policy,[2] Allstate misrepresented "what would be required of the Plaintiffs in the event they filed a claim under their policy." The suppression claim alleges that Allstate failed to disclose that it would require insureds to submit to an examination under oath and to produce extensive and irrelevant personal and financial records as a prerequisite to its paying an insurance claim. As one can see from the evidence, as we have described it in our discussion of the contract claim, there is a jury question on the misrepresentation and suppression claims also.
In addition, we note that Land testified by deposition that he had been requiring examinations under oath for most of his 27 years with Allstate, and there is no indication that before 1992 Allstate had in its policies a clause that would have permitted it to require examinations under oath. Furthermore, Mrs. Clarke presented pattern-and-practice evidence tending to support the misrepresentation and suppression claims. Because Mrs. Clarke submitted substantial evidence in support of her misrepresentation and suppression claims, the court erred in entering a summary judgment for Allstate on those claims. The affirmance of the judgment on those claims conflicts, as Mrs. Clarke's petition asserts, with cases such as Soniat v. Johnson-Rast & Hays, 626 So.2d 1256, 1258 (Ala.1993) ("In order to defeat a properly supported motion for summary judgment, the nonmovant must present `substantial evidence' supporting the nonmovant's position and creating a genuine issue of material fact"; summary judgment for the defendants on a fraudulent-concealment claim reversed).
The judgment of the Court of Civil Appeals is affirmed as to the bad-faith, outrage, and conspiracy claims. It is reversed as to the breach-of-contract, misrepresentation, and suppression claims, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
SHORES, KENNEDY, and COOK, JJ., concur.
HOUSTON and LYONS, JJ., concur in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., concur in part and dissent in part.
HOUSTON, Justice (concurring in the result).
I agree that the summary judgment was erroneously entered as to the three claims presented to this Court. The record before us indicates a fact question as to whether the provision relied on by Allstate Insurance Company"[Allstate] may also require [any person making a claim on the policy] to submit to examinations under oath and sign the transcript"was a part of the Clarkes' policy at the time the Clarkes' motor vehicle was alleged to have been stolen. If the trier of fact finds that it was, then a judgment must be entered for the Allstate defendants.
*143 MADDOX, Justice (concurring in part and dissenting in part).
I concur in that portion of the main opinion affirming the judgment of the Court of Civil Appeals insofar as it relates to the plaintiffs' claims alleging bad-faith failure to pay an insurance claim, the tort of outrage, and conspiracy. I must dissent from that portion reversing as to the breach-of-contract, misrepresentation, and suppression claims. The main opinion states that "the record contains substantial evidence indicating that Allstate had not mailed or delivered the endorsement." 728 So.2d at 140.
Once a defendant moving for a summary judgment makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Murdoch v. Knollwood Park Hospital, 585 So.2d 873, 876 (Ala.1991).
The main opinion concludes that the nonmovant, Patricia Clarke, met her burden by submitting a copy of the policy without the endorsement, the existence of which is a critical fact. She merely submitted a copy of the underlying policy without the endorsement or the declarations page and filed an affidavit stating that what she had submitted was a "true and correct copy of our Allstate insurance policy." Clearly, that is not substantial evidence creating an issue of fact, in view of the evidence presented by Allstate. Allstate provided an affidavit and a copy of the policy in question which, together, made a prima facie showing that the endorsement allowing Allstate to require an examination under oath had been made a part of the insurance contract in question. Mrs. Clarke presented no evidence, only her mere assertion, to indicate that the endorsement relied on by Allstate was in fact not part of the Clarkes' insurance contract. She certainly presented no evidence to indicate that Allstate had failed to notify her and her husband of the endorsement that would allow Allstate to require the insureds' testimony under oath. Black v. Reynolds, 528 So.2d 848, 849 (Ala.1988) (stating that "[e]vidence offered in response to [a motion for summary judgment] ... must be more than a mere verification of the allegations contained in the pleadings"). In my opinion, Mrs. Clarke failed to meet her burden of presenting substantial evidence.
Because Mrs. Clarke offered no substantial evidence indicating that the Clarkes' Allstate policy did not include the endorsement allowing Allstate to require an examination under oath, the Court of Civil Appeals properly affirmed Allstate's summary judgment as it related to the breach-of-contract, misrepresentation, and suppression claims.
HOOPER, C.J., and SEE, J., concur.
NOTES
[1] After this Court released its opinion in Nilsen, Allstate filed in this present case a motion for leave to file an additional brief discussing Nilsen, and it conditionally filed the brief. The Court has granted that motion, by a separate order. Mrs. Clarke moved to strike the supplemental brief, and she also filed a reply to it. The Court has denied the motion to strike, by a separate order, and we have considered her reply.
[2] That language is quoted above from the two letters sent by Allstate and its attorney to the Clarkes.