[773 NYS2d 337]

GEORGIA P. BLAU, Respondent, v SHAWN BLAU, Appellant, et al.,
Defendants.

First Department, January 29, 2004

APPEARANCES OF COUNSEL

*Sharon Stein, P.C.*, for respondent.

*Goldweber Lauriello & Epstein, LLP (Elyse S. Goldweber* and *Anthony Lauriello* of counsel), for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

Defendant husband appeals from an award of temporary child support and the confirmation of a referee's report finding that defendant has constructive possession of certain documents in the actual possession of his father and sister and the father's accountant and bookkeeper and recommending that defendant be directed to produce such documents. We are all in agreement that the temporary child support award should be modified; the only issue that divides us is whether defendant can be deemed in constructive possession of the subject documents.

To put the issues in proper perspective, a little background is in order. The marriage was of short duration—27 months. Married on January 16, 1999, the parties were in marriage counseling by April 2000. At the time of the marriage, the husband was completing his dissertation. Throughout the marriage the wife worked as an administrative director of research at Lenox Hill Hospital. There is one child of the marriage, a daughter born November 5, 1999.

The husband's father is a multimillionaire who funded various companies into which were placed various investment portfolios and by which, until the commencement of this action, the husband was employed. The wife asserts that defendant's 2001 income, including various tax-free perquisites, was in excess of $200,000. In addition, the husband's father allegedly funded a trust for his grandchildren, including the parties' daughter, from which she annually receives at least $50,000.

In December 2000, according to the husband, the wife told him that she wanted a separation and that he should leave the marital residence, an apartment owned by the husband's parents, which they had allowed him to use while he finished his dissertation. According to the wife, the husband left of his own accord. At the time the husband was interviewing for a teaching position, which he ultimately obtained, at Sacred Heart

University in Fairfield, Connecticut. He now leases an apartment in nearby Bridgeport, Connecticut.

When the wife refused to vacate the apartment after the husband's departure, his parents commenced a holdover proceeding against both of them. As part of a September 2001 settlement of that proceeding, the parents agreed to allow the wife to live, rent free, in the apartment until June 2002. In the interim, in May 2001, the wife commenced this action against the husband, seeking a separation, naming his parents as parties to the action as well, and simultaneously sought pendente lite relief. The husband answered and interposed a counterclaim for divorce. As part of the previously noted September 2001 stipulation, the wife voluntarily discontinued her action against the parents.

Both parties served notices for depositions and document production. The husband produced documents relating to his current employment as requested and, on October 10, 2000, was deposed. Although successfully resisting enforcement of a commission seeking discovery, his father, a Connecticut resident, through his own counsel, voluntarily produced documents sought by the wife, including two trust agreements in which the husband or the child is a beneficiary.

In an effort purportedly to make her case as to the husband's child support obligations, the wife has issued nine subpoenas to third parties: the Harvard Club, the husband's therapist, the Albert Ellis Institute (two), where the husband interned, Goodstein Management, People's Bank, MBNA America, Fourth Federal Savings Bank and Chase Platinum Visa. The husband also provided authorizations to obtain documents from Sacred Heart University, the Union Institute (where he did his graduate work), Southport Racquet Club, Sallie Mae (student loans), People's Bank and MBNA.

On March 7, 2002, Supreme Court referred to a special referee the outstanding issues regarding the wife's additional discovery demands as to the husband's father, his father's company, Bayberry IV Associates, LLC, his sister, and his father's accountant and bookkeeper, all residents or domiciliaries of Connecticut. On May 17, 2002 the referee issued an order stating, "As [the husband's] parents are non-parties and reside outside the jurisdiction of New York, coupled with the fact the [husband] (regardless of motive) is no longer a trustee of GST [Generation-Skipping Trust] Trust, and that the Trustee of the GST Trust has a legal and separate and fiduciary duty to

beneficiaries of the trust, I am constrained to deny the application." The referee also stated, "[T]he mere fact that [the husband] is related to one of the Trustees (father), was once employed by his father's firm, and that at [the] time of such employment the [husband] occupied offices where GST Trust documents are located, does not constitute possession, control or custody."

Approximately four months later, on September 27, 2002, after a Connecticut court refused to enforce the commissions issued by the referee upon the husband's father and others seeking discovery as to any assets managed by the husband or held for his benefit or in which he had a legal or beneficial interest, the same special referee, in contradiction of his earlier order and without a hearing, did a complete turnaround and held that the husband "has constructive possession, custody and control of the documents requested by the plaintiff" and directed that the husband produce them. Specifically, the commissions had sought documents with regard to any trust of which the husband or the parties' daughter was or is currently a beneficiary as well as canceled checks and bills for legal fees paid by the husband's father or by any business in which his father had an interest regarding both the eviction proceeding and the instant action. The wife also requested documents from the father with regard to gifts, loans, vacation payments, expenses for the New York apartment, cooperative housing expenses and gift tax returns with respect to gifts made to the husband from January 1999 to date. Similar commissions were issued as to the husband's sister, as well as his father's accountant and his bookkeeper.

In directing production of the documents, the referee placed great weight upon the eviction proceeding that the husband's parents had brought against the parties, without any explanation as to how this circumstance justifies a finding that the husband had "constructive possession, custody and control" of the father's documents. The referee also cited the father's payment of the husband's legal fees in this action, payments which, the husband claims, represent loans.* In addition, the referee relied on the father and son's use of the same accountant and bookkeeper, and on the fact that the husband is a former employee of one of the father's companies, having worked there from 1995 until, presumably, his hiring at the university. The

* The husband has a judgment against the wife for $15,000 in legal fees, which she has never satisfied.

son, in an affidavit, denies any ownership interest in the father's business. The referee also cited the fact that the parties against whom the commissions were directed successfully resisted their enforcement in Connecticut judicial proceedings, as to which, it should be noted, the husband claims he was not a party.

The referee's finding that the husband has a "legal or beneficial interest in" his father's holding companies lacks factual support in this record. A public accounting firm has furnished letters stating that the husband has no legal or beneficial interest in any of his father's companies, and the husband has consistently denied any such interest, including, as noted, by affidavit. Nor is the referee's conclusion that the husband had control over his father and sister and their records borne out by the record.

It should be noted that nothing of any legal significance occurred between his initial and subsequent reports to support the referee's sudden lurch in a different direction. The intervention of the Connecticut court is not legal justification. The cases cited by the referee, which, in the main, have to do with the subject of an adverse inference arising from the failure to call a witness, do not support the referee's conclusions in imputing custody and control over another person or entity's documents. Nor does the record support the dissent's conclusion that the husband and his parents have conspired to establish a litigation strategy. *Ausch v St. Paul Fire & Mar. Ins. Co.* (125 AD2d 43, 48 [1987], *lv denied* 70 NY2d 610 [1987]), cited by the dissent in upholding the referee's determination, similarly deals with the subject of adverse inference based on a party's failure to call a witness.

The factual background in which this broad discovery offensive is being waged cannot be ignored. As noted, the marriage was of brief duration. The husband's multimillionaire father, the target of most of the discovery requests, is not responsible for the husband's legal obligations; nor does the wife have any legitimate claim on the father's considerable wealth.

Quite apart from the lack of legal justification for the order confirming the referee's report, the demand for document production that underlies it is so onerous and overbroad that no court should sanction it or be asked to prune it.

As to the wife's motion for temporary child support, the court, by order entered November 21, 2002, directed the husband, inter alia, to pay $1,200 in monthly child support plus 100% of

the caregiver and nursery school tuition. Under the circumstances, in view of the sharply disputed issues of fact, including whether the husband's income is limited to his salary as a professor or includes funds from family sources, the motion should not have been decided on affidavits, and a fact-finding hearing should have been directed. Given the husband's representation as to a voluntary payment of $708 per month in child support and the wife's representations as to the child's reasonable needs, the husband should be directed to pay $900 per month and one half the nanny expenses and nursery school tuition pending the outcome of the hearing.

Accordingly, the order of the Supreme Court, New York County (John Stackhouse, J.), entered November 21, 2002, which confirmed a special referee's report finding that defendant is in constructive possession of certain documents not in his actual possession and recommending that defendant be directed to produce such documents, should be reversed, on the law and the facts, without costs or disbursements, the motion to confirm denied and the direction to defendant to produce documents vacated. Order, same court and Justice, also entered November 21, 2002, which granted plaintiff's motion for temporary child support to the extent of directing defendant to pay plaintiff $1,200 per month plus the child's entire nursery school tuition and entire expense of employing a nanny, should be modified, on the law and the facts, to direct defendant to pay temporary child support in the amount of $900 per month plus one half the cost of the nursery school tuition and child care expenses and the matter should be remitted for further proceedings, and otherwise affirmed, without costs or disbursements. The appeal from the decision and order, same court (Louis Crespo, Special Referee), entered October 8, 2002, should be dismissed, without costs or disbursements.

BUCKLEY, P.J. (dissenting in part). There are at least a few undisputed facts which have emerged from two years of litigation in this action: defendant was employed by one of his father's companies until commencement of this matrimonial action; defendant's father set up a trust for the parties' child for which defendant served as trustee until commencement of the action; and defendant has regularly received money from one or more family trusts in addition to his salary as a college professor. Plaintiff seeks disclosure relating to these trusts which defendant opposes on the ground that the trust documents are in his father's office in Connecticut and that he lacks control over

them. I would find that the special referee correctly rejected defendant's contention on the issue of constructive control of the documents sought based upon, inter alia, the father's payment of many of defendant's expenses, including his legal fees in this action, the father's prior employment of defendant, and the father's ownership of the marital home in which the parties lived rent-free and commencement of legal proceedings to evict plaintiff and the child therefrom. As the special referee found, it is reasonable to conclude that defendant's father is ready, willing and able to provide him with any document that defendant requests (*see Ausch v St. Paul Fire & Mar. Ins. Co.*, 125 AD2d 43, 48 [1987], *lv denied* 70 NY2d 610 [1987]). The record evidence is clear that the defendant and his parents have coordinated a litigation strategy in this matter, that the discovery sought is relevant and material, and that the documents sought by plaintiff are in defendant's constructive possession.

Accordingly, I would affirm the disclosure order. I agree with the majority's modification of the temporary child support order and the dismissal of the appeal from the special referee's report, denominated a decision and order.

NARDELLI and ANDRIAS, JJ., concur with SULLIVAN, J.; BUCKLEY, P.J., and ROSENBERGER, J., dissent in part in a separate opinion by BUCKLEY, P.J.

Order, Supreme Court, New York County, entered November 21, 2002, reversed, on the law and the facts, without costs or disbursements, the motion to confirm denied and the direction to defendant to produce documents vacated. Order, same court, entered November 21, 2002, modified, on the law and the facts, to direct defendant to pay temporary child support plus one half the cost of nursery school tuition and child care expenses, and the matter remitted for further proceedings, and otherwise affirmed, without costs or disbursements. Appeal from decision and order, same court, entered October 8, 2002, dismissed, without costs or disbursements.